UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| JAMIR DAVIS, | : | Case No. 2:25-cv-00113-DLB-CJS |
| | : | |
| Plaintiff, | : | Judge David L. Bunning |
| | : | |
| vs. | : | |
| | : | |
| JEFF MANDO, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR JUDGMENT ON
THE PLEADINGS OF DEFENDANTS, JEFF MANDO AND ADAMS LAW, PLLC**

Defendants, Jeffrey C. Mando ("Mando") and Adams Law, PLLC ("Adams Law"), by and through counsel, hereby state as follows for their Memorandum in Support of their Motion for Judgment on the Pleadings.

**INTRODUCTION**

This action is an improper collateral attack on two rulings by this Court in a predecessor lawsuit: one granting summary judgment to the defendants (the City of Covington and several police officers) and one granting attorneys' fees against plaintiff's counsel, Jamir Davis (the Plaintiff herein), for frivolous litigation conduct. The summary judgment ruling has already been affirmed by the Sixth Circuit; an appeal relating to the award of attorneys' fees remains pending.

Even worse, this entire lawsuit against Mando and Adams Law fails on its face because it is based entirely on allegedly false statements made by Mando in legal briefs during the predecessor case *that were actually true and accurate*. Moreover, even assuming *arguendo* that those statements were untrue, they are still absolutely protected as a matter of fundamental Kentucky law by the judicial statements privilege and cannot support any cause of action.

**EXHIBIT 1**

Accordingly, the filing of this case has only opened the door to more sanctions, based on a second round of frivolous litigation conduct. Davis ought to look in the mirror, rather than harass opposing counsel with baseless claims based on the underlying false premise that federal judges cannot evaluate the competing arguments of adverse lawyers without being duped or "misled."

## BACKGROUND

This case follows a civil rights case previously filed in this Court, styled *Wynn v. City of Covington, et al.*, E.D. Ky. Case No. 2:21-CV-137 ("the *Wynn* case"). Anthony Wynn sued the City of Covington and several police officers alleging violations of his constitutional rights during three separate arrests in 2020 and 2021. Mr. Wynn was represented by Davis, the Plaintiff herein; the defendants were represented by Mando and Adams Law, two of the Defendants herein.

As applied to Mando and Adams Law, this case arises entirely from allegedly false statements made during the course of defending the *Wynn* case. More specifically, Davis alleges that Mando made "false and material misrepresentations to the Court concerning [Wynn's] legal arguments, the content of discovery, and the absence of supporting evidence." (*E.g.*, Doc. 1-1, ¶ 98.) According to Davis, the Court was misled by these arguments and relied on them to dismiss the claims in the *Wynn* case and issue sanctions against him, which has resulted in "reputational" harm to Davis. (*Id.*, ¶¶ 95-96.) Thus, a discussion of the material procedural events in the *Wynn* case is necessary context for Davis's allegations.

## PROCEDURAL HISTORY

Davis filed the *Wynn* case on November 1, 2021, alleging constitutional violations and tort claims stemming from three separate arrests of Mr. Wynn on August 28, 2020, January 1, 2021, and January 16, 2021. *Wynn v. City of Covington*, 2024 WL 3855662, at *4 (E.D. Ky. Aug. 16, 2024), *aff'd sub nom., Wynn v. City of Covington, Kentucky*, 2025 WL 2093032 (6th Cir. July 25,

2025) (attached as **Exhibit 2**).[1]  All claims relating to the first arrest were quickly dismissed as barred by the statute of limitations.  (*Id*.)  Discovery proceeded on the remaining claims.  (*Id*.)

I.    **On August 16, 2024, this Court grants summary judgment in favor of the defendants on all claims asserted in the *Wynn* case.**

Relative to the January 1, 2021 arrest, this Court granted summary judgment to three police officers for two reasons.  First, the defense had conclusively "rule[d] out the possibility" that any of them were present during the arrest.  (Ex. 2, at *5-7.)  Second, "[i]n addition to suing officers that were not present, Plaintiff [did] not even detail what constitutional rights were violated."  (*Id*., at *6.)  According to this Court, Wynn should have "either articulate[d] for the Court how officers that were not present at the scene could have violated Plaintiff's constitutional rights or concede[d] the claim."  (*Id*.)  The Court then granted summary judgment to the City of Covington because there were no constitutional violations for which the city could be held liable.  (*Id*., at *7.)

The Court also granted summary judgment on all claims stemming from the January 16, 2021 arrest, which were based on theories of race discrimination and use of excessive force.  (*Id*.)  This Court held that Davis's refusal to (in Davis's words) "provide further analysis" for Wynn's

---

[1] The Court may take judicial notice of filings in federal lawsuits.  *E.g.*, *U.S. v. Ferguson,* 681 F.3d 826, 834 (6th Cir. 2012) ("Judicial records are a source of 'reasonably indisputable accuracy' when they record some judicial action such as dismissing an action[.] … Courts can properly notice prior judicial acts for the purpose of acting upon them.") (quoting 21B Charles Alan Wright et al., Federal Practice and Procedure § 5106.4 (2d ed. 2005)).  In addition, in considering a motion for judgment on the pleadings, a reviewing court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting the motion to one for summary judgment. *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). For ease of the Court's reference, this Court's summary judgment ruling is attached as **Exhibit 2**; this Court's sanctions ruling is attached as **Exhibit 3**; and the Sixth Circuit affirmance of summary judgment is attached as **Exhibit 4**.

claims was fatal, since he had not identified specific allegations of constitutional violations and not developed his argument.  (*Id.*, at *8: "it is not for the Court to assume Plaintiff's argument."[2])

Finally, this Court held that the remaining claims failed for various reasons, including the application of qualified immunity and the fact that use of force was reasonable.  (*Id.*, at *12-14.)

## II.    On April 8, 2025, this Court grants defendants' motion for attorneys' fees, based on multiple instances of frivolous conduct.

This Court granted fees relating to multiple aspects of Davis's prosecution of the *Wynn* case. *Wynn v. City of Covington*, 2025 WL 1047711, at *6 (E.D. Ky. Apr. 8, 2025) (attached as **Exhibit 3**.)  Relative to the January 1, 2021 arrest, fees were awarded because Davis should have conceded the claims against the officers whom the defendants proved were not present during the arrest.[3]  (*Id.*, at *5-6.)  Instead, "Plaintiff persisted with the baseless claim, requiring Defendants to further defend their position in their Reply."  (*Id.*, at *6.)  According to this Court, Davis's conduct "went far beyond" zealous advocacy: "certainly, Mr. Davis knew, or should have known, that after being presented with undisputable and conclusive evidence, he was unreasonably and vexatiously duplicating litigation and falling far below the duty he owed to this Court."  (*Id.*, at *11.)

Relative to the January 16, 2021 arrest, the Court granted attorneys' fees for the "bombastic" equal protection claims, which were "frivolous and wholly without foundation from the start[.]"  (*Id.*, at *7.)  According to this Court:

---

[2] This Court summarized what Plaintiff appeared to be arguing as follows: "it appears Plaintiff is simply arguing that because he is African American, and the Defendants are white, the arrest was racially motivated."  (*Id.*, at *9.)  Such a theory is obviously insufficient (as later confirmed by the Sixth Circuit).

[3] Notably, as demonstrated by the issues addressed in the Sixth Circuit opinion affirming summary judgment, Mr. Wynn did not appeal the summary judgment entered on claims relating to the January 1, 2021 arrest.  (Ex. 4, at *2.)

> The equal protection claim, and Mr. Davis's surrounding conduct was so frivolous, so vexatious and unreasonable, that this Court sought to characterize the claim as incendiary, bombastic, and not grounded in reality.  Mr. Davis's decision to make such incendiary claims against Defendants and then refusing to provide this Court with even a modicum of evidence for such claims falls far below the "obligations owed by a member of the bar to the court, and which, as a result, caused additional expense to the opposing party."

(*Id.*, at *11) (internal citation omitted).

The Court also awarded fees for the Fifth Amendment self-incrimination claim, for which "Plaintiff failed to provide any evidence or meaningful analysis whatsoever[.]"  (*Id.*, at *8.)  The Court found it "strikingly clear" that Davis understood the Fifth Amendment does not prevent an officer from requesting identification, and his attempt to distinguish that authority by claiming Mr. Wynn was "coerced" into providing identification failed because Davis "refused to elaborate, expand, or provide any example at all of this behavior."[4]  (*Id.*, at *12.)

## III.    Despite pending appeals in the Sixth Circuit, Davis files this action on July 24, 2025.

Mr. Wynn appealed both the summary judgment ruling (at least certain aspects of it) and the sanctions ruling in separate appeals.  Obviously, the Sixth Circuit was the correct forum to challenge both, but undeterred by the pendency of the appeals in the appropriate forum, Davis elected to file the instant *pro se* lawsuit himself.  (Doc. 1-1.)  As applied to the City of Covington, he alleges retaliation and harassment by police officers.  But as applied to Mando and Adams Law, his claims are based entirely on the theory that Mando mischaracterized evidence and arguments in the *Wynn* case, which then misled the Court into dismissing the claims on summary judgment and awarding sanctions.  In other words, Davis, apparently convinced that he would lose the

---

[4] This refusal was particularly noteworthy since it was undisputed Mr. Wynn did not identify himself (much less as a result of coercion); he lied to the officers by giving "a false name" – that of his brother, Ronnie Wynn – which happened to have an arrest warrant attached to it.  (Ex. 2, at *9.)

appeals in the Sixth Circuit, decided to collaterally attack this Court's rulings in state court, with the hope that a different judge would see the issues differently.

## IV.    On July 25, 2025, the Sixth Circuit affirms the summary judgment ruling.

Ironically, the day after Davis filed this action, the Sixth Circuit issued an opinion affirming this Court's partial dismissal on statute of limitations grounds and its dismissal of the remaining claims on summary judgment. *Wynn v. City of Covington, Kentucky*, 2025 WL 2093032, at *4 (6th Cir. July 25, 2025) (attached as **Exhibit 4**.)  Regarding the equal protection claim (*i.e.*, one of the claims that garnered sanctions), the Sixth Circuit held that Wynn had not identified sufficient evidence of race discrimination: "All he has is the reality that he and the officers belong to different races. That does not suffice."  (*Id.*, at *3.)  Regarding the Fifth Amendment self-incrimination claim, the claim failed because "no one forced Wynn to incriminate himself[.]"  (*Id.*, at *4.)  According to the Sixth Circuit: "[i]n reality, Wynn never disclosed his own name at all. He pretended to be his brother when Officer Murphy requested identification. One cannot self-incriminate by pointing the finger at someone else."  (*Id.*)

## LEGAL ARGUMENT

"The court analyzes a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Campbell v. Cracker Barrel Old Country Store, Inc.*, 2020 U.S. Dist. LEXIS 253539, at *3 (W.D. Ky. Mar. 9, 2020).  "Therefore, to survive a Rule 12(c) motion, a complaint must contain enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully; the factual allegations must "raise a right to relief above the speculative level."  *Id.* (quoting *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)) (internal quotation marks omitted).  When analyzing the sufficiency of the Complaint, this Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (citation omitted).

"In considering a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Campbell*, 2020 U.S. Dist. LEXIS 253539, at *3.  Although the allegations in the complaint are the "primary focus," other items appearing in the record may also be taken into account.  *Id.*, at *4.

I.    **Plaintiff's claims for Defamation and Intentional Misrepresentation (Counts Two, Three, and Four) fail because the statements by Mando were true.**

"It is well settled that truth is a complete and absolute defense to an action for libel or slander."  *Tucker v. Kilgore*, 388 S.W.2d 112, 114 (Ky. 1965); *see also Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011)  ("A claim of defamation may be defeated by establishing the truth of the matter asserted[,] which is an absolute defense.").  Likewise, a claim for intentional misrepresentation "require[s] that the alleged misrepresentation must have been false."  *Downs v. Kentucky Lottery Corp.*, 2012 WL 4839541, at *4 (Ky. App. Oct. 12, 2012) (affirming dismissal of misrepresentation claims where the statements issue were not false).  Here, the Complaint identifies five allegedly false statements made in the course of seeking sanctions in the *Wynn* case.  However, the findings and rulings of this Court and Sixth Circuit demonstrate that all of these statements were true.[5]

---

[5] While Davis's claims fail on this basis alone, they must also be rejected because Mando's statements are absolutely privileged as expressions of his opinions concerning the evidence that had been submitted and the prior arguments that had been made in the *Wynn* case.  *See Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732, 738 (Ky. App. 2004) (affirming summary

**A.    Mando correctly argued (as found by this Court) that Davis unreasonably multiplied the proceedings by failing to concede frivolous claims.**

Davis claims Mando falsely represented, in his motion for sanctions filed with the Court, that Davis had "unreasonably and vexatiously multiplied the proceedings" in violation of 28 U.S.C. § 1927.  (Doc. 1-1, ¶ 25.)  Davis suggests this was false because Mando "never contacted JAMIR to request dismissal or to confer on the merits of the claims."  (*Id*., ¶ 27.)

First of all, this theory demonstrates why the judicial statements privilege (discussed *infra*) exists in the first place.  If the mere recitation of a statutory standard was grounds for a defamation lawsuit, literally every motion for sanctions under 28 U.S.C. § 1927 would be grounds for a collateral attack.  This is untenable and incapable of supporting a claim.

Second, this entire theory assumes Mando was obligated to request dismissal of a claim before seeking sanctions under 28 U.S.C. § 1927, which is wrong as a matter of law.  *See Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) ("Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period[.]").  Mando owed no duty to prevent Davis from making frivolous, vexatious and unreasonable claims.

Third, as demonstrated by how this Court described Davis's conduct, certainly there was nothing false about Mando's arguments of vexatious and unreasonable conduct:

> Rather, the equal protection claim, and Mr. Davis's surrounding conduct was so frivolous, so vexatious and unreasonable, that this Court sought to characterize the claim as incendiary, bombastic, and not grounded in reality.

(Ex. 3, at *11)

---

judgment dismissal of defamation claim "because the words allegedly uttered were absolutely privileged as expressions of opinion based on truthful facts").

**B.    Mando correctly argued (as found by this Court and the Sixth Circuit) that the proceedings were duplicated by a frivolous equal protection claim.**

Davis claims Mando "falsely assert[ed] that proceedings were duplicated because he and the CITY were forced to readdress a claim of equal protection on summary judgment." (Doc. 1-1, ¶ 34.) Although not entirely clear, it appears Davis is alleging that Mando "admittedly failed to address" the claim in his original summary judgment motion, thus Mando's argument about being forced to address the frivolous claim in his reply brief was false. (*See id.*, ¶¶ 40 and 44.)

The Sixth Circuit has destroyed the premise of this argument – namely, that the equal protection claim was improperly unaddressed by Mando until the reply brief:

> Wynn complains that the defendants failed to raise this [equal protection] argument in their initial motion for summary judgment. Yes, the defendants did not raise this argument then. But no, that is not a problem, as the defendants' silence had a good explanation. Wynn, as it happens, did not raise a race-discrimination claim in his complaint, giving the defendants no reason to address it in the first round of briefing. … Quite understandably, then, the defendants waited until their reply brief to reply to arguments—a federal equal protection claim—first "made in the response brief." No error occurred.

(Ex. 4, at *4) (internal citations and quotation marks omitted). Thus, Mando correctly argued Davis had duplicated the proceedings by forcing him to address the equal protection claim in reply.

**C.    Mando correctly argued that no evidence of racial animus had been discovered in the *Wynn* case.**

Next, Davis alleges Mando falsely asserted that "no racial animus was found in discovery." (Doc. 1-1, ¶ 46.) Davis claims sworn testimony did, in fact, provide evidence of racial animus.

However, based on the Sixth Circuit's ruling it is clear that Mando accurately described the evidentiary record in the *Wynn* case:

> Wynn has not identified sufficient evidence to support his race discrimination claim. Before the district court, he made only the conclusory allegation that the Covington Police Department has a practice of using extreme force against black citizens but not others. ***Nothing in the record, however, backs that up***. He does not cite any instances of the City providing more favorable treatment to white

9

citizens in similar circumstances . . . or statistical evidence indicating that the City enforces laws differently depending on race. . . .  He does not identify any other case or complaint along these lines.  And he does not identify any investigation or report that would support this claim.  All he has is the reality that he and the officers belong to different races. . . .  That does not suffice.

(Ex. 4, at *3; citations omitted; emphasis added.)  Clearly, the record contained no evidence of racial animus, just as Mando had argued.[6]

### D.    Mando correctly characterized Wynn's frivolous claims against police offers who were not even present during the arrests at issue.

Next, Davis claims Mando falsely represented that the claims against three officers were frivolous and should have been conceded, because they were not present at the arrest for which they were sued.  (Doc. 1-1, ¶ 56.)  Yet this Court explicitly found that the claim should have been conceded upon the filing of the motion for summary judgment:

> The Court is reluctant to agree with Defendants that the January 1, 2021 claim was unreasonable from the outset. Certainly, the events of January 1, 2021 were hectic and Plaintiff was unlikely to correctly identify every officer in that room that evening. … While the Court acknowledges that the video evidence plainly depicts that Defendants Ullrich, Murphy, and Elsbernd were not inside the residence on January 1, 2021, the Court nevertheless resonates with the argument made by Plaintiff that he was entitled to discovery that "could shed light on the potential involvement of the named officers."

---

[6] Davis tries to argue that proof of racial animus arises from the Chief of Police's testimony that he does not recall watching body-worn camera footage showing a white citizen being placed in a chokehold, or a white citizen being punched by an officer.  (Doc. 1-1, ¶ 47.)  Davis also claims racial animus arises from an officer testifying he has no reason to believe that Black drivers are identified more than white drivers.  (*Id.*, ¶ 50.)  How Davis equates that testimony with such convincing proof of racial animus against African Americans – so much so that it is defamatory to argue otherwise – is mystifying.  (*See* Ex. 2, at *9: "Plaintiff mischaracterizes a statement from the deposition of Chief Nader to say that African Americans were treated differently than white citizens, when in reality, Chief Nader only stated that he could not recall another specific incident where a similar use of force was performed on a white citizen. The Court hardly considers this evidence of department-wide racial discrimination[;]" Ex. 4, at *4: "One officer's inability to remember a specific use of force against a specific demographic does not provide evidence that the police department does not use such force in that setting.")  Davis also suggests proof of racial animus arises from an officer's testimony that he had been accused of racial discrimination.  (*Id.*, ¶ 51.)  Defendants will state what should be a truism: an accusation of racial discrimination in another context is not proof of racial animus, just as Mando argued.

> However, once Defendants filed the Motion for summary judgment, resubmitting the video evidence and introducing new documents that "rule[d] out the possibility that Officers Murphy, Elsbernd [sic], and Ullrich could have been standing out of frame[,]" Plaintiff should have conceded the claim.  At that point, Plaintiff could no longer rely on his statements that he "may" have seen Officers Ullrich, Murphy, and Elsbernd to proceed on his claim. Rather, Plaintiff "should have known [he] could not prove [his] claim as pleaded" and should have immediately reassessed.

(Ex. 3, at *6.)  Based on this finding, this Court awarded fees for the time and expense incurred further briefing this claim in reply.  (*Id*.)

In short, this Court thoroughly considered Davis's position on the frivolity of the claim against these particular officers and found that the claim should have been conceded upon the filing of a motion for summary judgment.  How Davis now claims that Mando's assertions about the state of the record – which included video footage and documentary proof that the officers were not even on duty – equates to a false representation is perplexing.  It was a true and accurate characterization of the record, which a federal judge found to be dispositive.

### E.    Mando correctly characterized the Fifth Amendment claim and why it failed due to the absence of any coercion for Wynn to incriminate himself.

Finally, Davis alleges Mando falsely characterized the Fifth Amendment self-incrimination claim in the *Wynn* case as one based on the theory that police officers may not ask an individual for identification, when "the actual claim was based on coercion after Plaintiff explicitly refused to identify himself."  (Doc. 1-1, ¶¶ 57-58.)  According to Davis, this putative mischaracterization "cause[d] the Court to find the self-incrimination claim frivolous[.]"  (*Id*., ¶ 59.)

First, this theory fails because this Court clearly understood the issue and Plaintiff's argument about his claim being based on alleged coercion.  (Ex. 3, at *8.)  This Court simply rejected the coercion argument because Davis "refused to elaborate, expand, or provide any example at all of this behavior."  (*Id*., at *8, 12.)  This refusal was particularly noteworthy since it

was undisputed Mr. Wynn did not identify himself (much less as a result of coercion); he lied to the officers by giving "a false name" – that of his brother, Ronnie Wynn – which happened to have an arrest warrant attached to it.  (Ex. 2, at *9.)

Similarly, the Sixth Circuit clearly understood the "coercion" distinction Davis is trying to make and found that the claim failed as a matter of fact and law:

> The Fifth Amendment, generally speaking, does not prevent an officer from asking someone to identify himself.  The guarantee prohibits only compelled testimony that is incriminating."  . . .  Wynn offers nothing to explain how the disclosure of his name at a lawful traffic stop presented a reasonable danger of incrimination. … In reality, Wynn never disclosed his own name at all.  He pretended to be his brother when Officer Murphy requested identification.  One cannot self-incriminate by pointing the finger at someone else. . . .  Because no one forced Wynn to incriminate himself, his Fifth Amendment claim necessarily fails.

(Ex. 4, at *4)  (citations and quotation marks omitted).  Thus, Mando did not mischaracterize anything (much less to the point of successfully misleading this Court or the Sixth Circuit).

Third, the forum for Davis to make this argument was in this Court and the Sixth Circuit – not a new action against Mando and Adams Law.  Davis's argument in this regard is further evidence why this lawsuit is an improper collateral attack (discussed *infra*) and is subject to dismissal on that basis.

## II.    All claims asserted against Mando and Adams Law should be dismissed because they are based entirely on statements protected by the judicial statements privilege.

Even assuming *arguendo* that the statements made by Mando in the *Wynn* case were not true, all of Davis's claims should nevertheless be dismissed as Mando's statements are protected by the judicial statements privilege.  This privilege, which is "described … as the 'prevailing rule' in Kentucky and this country, provides that statements in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." *Maggard v. Kinney*, 576 S.W.3d 559, 567 (Ky. 2019)

(internal citation and quotation marks omitted). "Derived from caselaw, as opposed to a statute or rule of evidence, the judicial statements privilege rests upon public policy which looks to the free and unfettered administration of justice." *Id*. (internal citation and quotation marks omitted). Thus, the judicial statements privilege "encompasses written statements in pleadings as well as the statements of witnesses in judicial proceedings." *Id*.

The criterion for application of the privilege is slight: "the challenged statements need only have some relation to the subject matter of the action." *GenCanna Global USA, Inc. v. Jenco Industrial Sales & Services, LLC*, 2020 WL 94512, at *2 (E.D. Ky. Jan. 8, 2020) (dismissing claims for slander, libel, and defamation where alleged defamatory statements were made during course of a judicial proceeding). So long as that criterion is met, claims fail as a matter of law no matter how they are styled. Indeed, "courts apply the privilege to many torts beyond defamation." *Parton v. Parton*, 2023 WL 2146374, at *4-5 (E.D. Ky. Feb. 21, 2023) (applying the privilege and dismissing claims for fraud and negligent misrepresentation); *Deal v. First and Farmers Nat'l Bank, Inc.*, 518 S.W.3d 159, 173 (Ky. App. 2017) (affirming dismissal of fraudulent misrepresentation and fraudulent omission claims based on judicial statements privilege); *Taylor v. Jackson Lewis LLP*, 2014 WL 4494254, at *6 (W.D. Ky. Sept. 10, 2014) (applying privilege to claims against a lawyer and law firm for defamation, IIED, violation of the Kentucky Rules of Professional Conduct, abuse of process, conspiracy, constitutional violations, res ipsa loquitur, and respondeat superior: "The claims in this case arise from allegedly defamatory statements purportedly made by Weber during her representation of 313 in the EEOC and Workers

13

Compensation matters and in the discrimination action filed against 313. As such, these statements are protected by absolute privilege and not actionable.").[7]

Here, Davis's claims against Mando and Adams Law for negligence (Count One), defamation (Count Two), intentional misrepresentation (Counts Three and Four), and IIED (Count Five), collectively fail as a matter of law because they are each based entirely on statements made in written briefs filed in the *Wynn* case regarding the subject matter of the *Wynn* case or in oral arguments to this Court. For instance, Davis summarizes his claims against Mando and Adams Law as follows:

> Defendant Jeff Mando and Adams Law PLLC, who represent the City of Covington Police Department and have been directly involved in defending its officers, deliberately breached their duty of honesty and accuracy to the Court by misrepresenting the legal arguments made by Jamir Davis in order to portray Plaintiff as using false or inaccurate law.

(Doc. 1-1, ¶ 7.) Davis then repeats the same overarching allegation – misrepresentations contained in written briefs filed in the *Wynn* case – under each claim against Mando and Adams Law:

- Negligence (Count One): "Defendants breached their duties by making false and misleading representations to the Court[.]" (Doc. 1-1, ¶ 85.[8])

---

[7] The Kentucky Supreme Court has even applied the privilege to bar defamation and professional negligence claims relating to false statements made in a CPA's expert report and testimony he provided during an arbitration. *New Albany Main Street Properties, LLC v. Stratton*, 677 S.W.3d 345 (Ky. 2023). In *New Albany*, the allegedly defamatory statements referenced in the complaint dealt with statements made by the expert concerning the plaintiff's financial records, which were later proven to be false. *Id.* at 349. The Supreme Court noted that all of the statements had occurred during the arbitration proceedings. Because the court-ordered arbitration was conducted as part of a judicial proceeding and the statements were related to those proceedings, the relevant statements plainly fell within the privilege – even if they were later proven to be false. *Id.*

[8] Paragraph 85, which is asserted against the City of Covington as well, also contains allegations about "publishing defamatory statements" and "failing to prevent and address retaliatory harassment by CITY employees and law enforcement officers." (Doc. 1-1, ¶ 85.) However, these particular allegations clearly apply only to the City of Covington. (*See id.*, ¶¶ 24 and 65, where Davis claims "the CITY publicly referenced the sanctions order" and "issued public statements referencing the ruling."). The Complaint is bereft of any allegations about Mando or Adams Law "publishing" false statements outside of the *Wynn* case or somehow failing to prevent" alleged

- Defamation (Count Two): "Defendant MANDO and ADAMS LAW knowingly made false statements of fact about Plaintiff's legal actions and conduct in public legal filings and in open Court." (*Id.*, ¶ 88.)

- Intentional Misrepresentation (Count Three): "Defendants ADAMS LAW and MANDO intentionally made false statements to the Court concerning the substance of Plaintiff's claims and the record evidence, with knowledge of their falsity." (*Id.*, ¶ 93.)

- Intentional Misrepresentation (Count Four): "Defendants MANDO and ADAMS LAW knowingly made false and material misrepresentations to the Court concerning Plaintiff's legal arguments, the content of discovery, and the absence of supporting evidence—all of which were contradicted by deposition testimony and record evidence available to him." (*Id.*, ¶ 98.)

- Intentional Infliction of Emotional Distress (Count Five): "Defendants ADAMS LAW and MANDO's false accusations and misrepresentations to the Court likewise constitute extreme and outrageous conduct that compounded the harm and trauma to Plaintiff." (*Id.*, ¶ 106.)

In short, on the face of the Complaint, every claim against Mando and Adams Law is based on allegedly defamatory statements and misrepresentations made in written briefs filed or arguments made in the *Wynn* case. And, every alleged statement was pertinent and relevant to the *Wynn* case, in that each statement was about either the evidence of record or Mr. Wynn's claims and legal arguments. Thus, the allegedly false statements are absolutely privileged, and all claims asserted against Mando and Adams Law should be dismissed with prejudice. *See Taylor*, 2014 WL 4494254, at *6 (holding that statements made during a workers' compensation proceeding and a discrimination lawsuit were "protected by absolute privilege and not actionable" on any claim).

---

harassment by city police officers. Certainly Mando and Adams Law owe no duty to direct or supervise police officers in the performance of their duties.

III. **All claims asserted against Mando and Adams Law should be dismissed because this lawsuit is barred by the collateral attack doctrine.**

Dismissal of Davis's claims is further warranted because the Complaint is nothing more than a collateral attack on the two rulings entered by this Court in the *Wynn* case. As recently noted by the Sixth Circuit, a collateral attack is "an attack on a judgment in a proceeding other than on a direct appeal." *Republic Bldg. Co., Inc. v. Charter Twp. of Clinton, Michigan*, 81 F.4th 662, 666 (6th Cir. 2023) (citing *United States v. Asakevich*, 810 F.3d 418, 423 (6th Cir. 2016)). Such an attack "seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Id.* (quoting *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004)). In this vein, collateral attacks exist where the relief sought would, in some way, overrule another court's ruling. *Id.* The Sixth Circuit has therefore reasoned that declining to entertain collateral attacks is necessary to promote judicial efficiency and order. *Id.*

The collateral attack doctrine has routinely been applied to dismiss claims seeking to challenge a ruling in an earlier case. For example, in *Harbinger Cap. Partners LLC v. Ergen*, 103 F. Supp. 3d 1251 (D. Colo. 2015), the plaintiff filed a lawsuit alleging all of the same facts that he had asserted in a prior case, and he further attempted to shore up his new complaint by alleging that the judgment in that case would not have been entered had the defendants not misrepresented certain key facts to the court. *Id.* at 1257-58. However, the court rejected the plaintiff's claims under the collateral attack doctrine:

> To the contrary, "[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972). Here, the immediate cause of the harm of which Harbinger [the plaintiff] complains is the Special Committee Order – that is the reason Harbinger lost its control rights. Thus, to succeed in this lawsuit on any theory, Harbinger would need to prove that the Special Committee Order was improperly obtained. Harbinger necessarily attacks "the validity of the Bankruptcy Court's order." Harbinger may not do so in this Court. *See Celotex Corp. v.*

> *Edwards*, 514 U.S. 300, 313 (1995) ("If respondents believed the [Bankruptcy Court's order] was improper, they should have challenged it in the Bankruptcy Court.... Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's [order] in [other] federal courts.... This they cannot be permitted to do without seriously undercutting the orderly process of the law.").

*Id.* at 1265-66. Accordingly, the court dismissed the plaintiff's complaint as an impermissible collateral attack. *Id.* at 1266.

The same result was also reached in *Ismaiyl v. Nugent*, 2019 WL 118602 (N.D. Ohio Jan. 7, 2019). The plaintiff in that case filed a new complaint wherein he recounted the proceedings in the prior case and contended that the defendant "deliberately used erroneous and false facts in decisions rendered in the Closed Case, and that the Sixth Circuit deferred to defendant's alleged use of false facts in affirming defendant's rulings in the Closed Case." *Id.* at *1. Despite these allegations, the court held that the action was barred by the collateral attack doctrine. *Id.* at *3. It explained that the new action "necessarily attacks and seeks to circumvent the judgment in the Closed Case, the Sixth Circuit's decision affirming the judgment in the Closed Case, and the Supreme Court's decision to deny [the plaintiff's] petition for a writ of certiorari." *Id.* Thus, the plaintiff's claims were dismissed as an impermissible collateral attack on the earlier judgment. *Id.*

Davis is attempting to do the very same thing in this case. Indeed, while his Complaint asserts new state law claims against Mando and Adams Law, the new claims focus entirely on statements and supposed misrepresentations by Mando during the *Wynn* case which contributed to the ultimate dismissal of the earlier case. However, these issues were already raised and addressed by this Court in the prior case and by the Sixth Circuit on appeal, and a contrary outcome in this case would require the Court to "in some fashion overrule the previous judgment." *Harbinger*, 103 F. Supp. 3d at 1265. The Complaint therefore constitutes an impermissible collateral attack and should be dismissed. *See also Massey v. Specialized Loan Servicing, LLC* 2024 WL 4471678,

at *4 (6th Cir. Sept. 9, 2024) (holding that arguments made by plaintiffs in separate lawsuit filed after judgment was rendered against them "amount[ed] to an impermissible collateral attack on that judgment"); *Villas at Woodson Bend Condominium Ass'n v. Citizens National Bank*, 2012 WL 6085409, at *2 (Ky. App. Dec. 7, 2012) ("These contentions are practically identical to those presented – and rejected – in the appeal from the Developer Action.  The Association's arguments here represent an impermissible collateral attack on the judgment rendered in the Developer Action, and must be barred under the doctrine of collateral estoppel.").  For this reason, the entire lawsuit should be dismissed.

## IV.    Plaintiff's Negligence and IIED claims fail for additional, independently dispositive reasons.

### A.    Plaintiff's claim for Negligence (Count One) fails for lack of a cognizable duty owed to Davis.

For his negligence claim, Davis claims Mando and Adams Law "owed [him] a duty of care, honesty, and professionalism … in the context of litigation."  (Doc. 1-1, ¶ 84.)  Presumably this is a reference to the Rules of Professional Conduct, which govern a lawyer's conduct in the course of litigation.  This negligence theory fails as a matter of law.

It is well established in Kentucky that a violation of the Rules of Professional Conduct does not, in itself, create a private right of action against counsel who committed the violation.  *Rose v. Winters, Yonkers & Rousselle, P.S.C.*, 391 S.W.3d 871, 873 (Ky. App. 2012) ("We are unaware of any authority supporting this type of cause of action [claims based on violations of the Kentucky Supreme Court Rules of Professional Conduct].");  *see also* SCR 3.130, Preamble XXI ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.").  Rather, a plaintiff must show that counsel "owes a duty independent" of those set forth in the Rules.  *See Hill v. Willmott*, 561

S.W.2d 331, 333-34 (Ky. App. 1978). On this point, Kentucky courts have made clear that legal counsel for a party owes no duty to the opposing party.

For instance, in *Seiller Waterman, LLC v. RLB Props., Ltd.*, 610 S.W.3d 188 (Ky. 2020), the plaintiff attempted to bring a negligence claim against a law firm that had represented adverse parties, based on actions the law firm took on behalf of those parties. *Id.* at 201. The Kentucky Supreme Court explicitly rejected the claim for lack of a duty owed to the plaintiff: "as a matter of law, a party is not entitled to assert a negligence claim against the legal counsel who represented an opposing party in prior litigation, because no duty flows from that counsel to their client's adversary." *Id.*[9] The Court further explained that "allowing a party to bring a negligence action against the adverse attorney would have a chilling effect on the number of meritorious claims filed and this cannot be tolerated under our system." *Id.* Thus, the trial court had properly dismissed the negligence claim. *Id.* at 202.[10]

Based on these authorities, Davis cannot maintain an action against Mando and Adams Law based on a violation of some amorphous "duty of care, honesty, and professionalism." Under no circumstances did Mando or Adams Law owe a duty specifically to Davis, thus the claim fails.

**B.    Plaintiff's claim for IIED (Count Five) is not a plausible claim.**

First, IIED (also referred to as "outrage") is a "gap-filler," thus "the Kentucky courts have long held that if a set of facts establishes a traditional tort, by definition it cannot establish

---

[9] In so ruling, the Court rejected arguments about a lawyer's duty to his client somehow extending to his client's adversary, and about an adverse party somehow being an intended beneficiary of the work an attorney performs on his client's behalf. *Id.* at 201-02.

[10] The same rationale was relied on by the Supreme Court to bar a professional negligence claim by a party against its adversary's expert in *New Albany Main Street Properties, LLC v. Stratton*, 677 S.W.3d 345 (Ky. 2023). The Court explained that "Kentucky courts have routinely recognized that [the duty of care] is not boundless." *Id.* at 351. Rather, to create a duty, "there is the necessity of a legally cognizable relationship between the parties." *Id.*

intentional infliction of emotional distress." *Sawyer v. Boone County, Ky.*, 2024 WL 4860828, at *8 (E.D. Ky. Nov. 21, 2024); *see also Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993) ("The tort of outrage was intended to supplement the existing forms of recovery, not swallow them up."). Here, all of Davis's claims fail for multiple reasons, but even if the Court were to ignore those legal infirmities (*e.g.*, the truth defense, the judicial statements doctrine, and the collateral attack doctrine), the allegations about misrepresentations leading to reputational harm would establish the traditional tort of defamation. Thus, the allegations cannot support an IIED claim. *Sawyer*, 2024 WL 4860828, at *8 (dismissing IIED claim because "[w]here, as here, the facts alleged amounted to assault, battery, and/or other traditional torts, a claim for the tort of outrage will not lie.").

Second, Davis's allegations clearly do not state a plausible claim for IIED, which has the following elements: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984). While Davis makes grandiose allegations about intentional misrepresentations, his putative claim fails at the second, third, and fourth elements.

Regarding the second element, the conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990). Claiming that an opposing lawyer mischaracterized legal arguments in the course of zealously advocating for his clients in litigation, even if true, is not outrageous, extreme, atrocious, or utterly intolerable as a matter of law.

Regarding the third and fourth elements, a plaintiff must allege specific facts giving rise to a plausible allegation of severe emotional distress to survive a Rule 12 motion:

> On a motion to dismiss, this element requires alleging specific facts showing the severity of the emotional distress. Certainly, Snider need not prove the severity of his distress at this stage, but he must at least allege *some* facts that make it plausible on the face of the Amended Complaint that his emotional distress was severe. Snider falls short of this bar because he has made no factual allegations about what emotional distress he experienced or the severity of that distress *at all*, therefore the Court cannot find that he plausibly alleged the fourth element of IIED.

*Snider v. City of Lyndon*, 2024 WL 3165322, at *9 (W.D. Ky. June 25, 2024) (internal citations and quotation marks omitted).  As in *Snider,* Davis's Complaint makes a single conclusory statement that alleged misrepresentations by Mando and Adams Law caused "severe emotional distress," but that is insufficient to state a plausible claim.  This is particularly true in this case, where it is simply not plausible to believe that a seasoned civil rights lawyer like Davis could or would suffer any emotional distress – much less severe emotional distress – as a result of arguments made by opposing counsel in judicial proceedings.  This is probably why the IIED claim appears to be primarily based on the alleged "[r]epeated and deliberate acts of Covington police officers simulating gun violence," as opposed to statements made by Mando during the course of the *Wynn* case.  (*See* Doc. 1-1, ¶¶ 104-105.)

## <u>CONCLUSION</u>

This action is clearly frivolous and improper as applied to Mando and Adams Law.  Accordingly, all claims asserted against them should be dismissed with prejudice.

Respectfully submitted,

/s/ David V. Kramer
David V. Kramer (KBA #39609)
Mark D. Guilfoyle (KBA #27625)
Michael J. Enzweiler (KBA #96989)
DRESSMAN BENZINGER LAVELLE PSC
109 East Fourth Street
Covington, KY 41011
(859) 341-1881 (T)
(859) 788-2011 (F)
dkramer@dbllaw.com
mguilfoyle@dbllaw.com
menzweiler@dbllaw.com
*Counsel for Defendants*
*Jeff Mando and Adams Law, PLLC*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on all counsel of record through the Court's CM/ECF system this 14th day of August, 2025.

/s/ David V. Kramer
David V. Kramer (KBA #39609)